UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CARLOS LUGO,<br><br>      Petitioner,<br><br>  vs.<br><br>RICHARD KIRKLAND, Warden,<br><br>      Respondent. | Case No: C 05-00580 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Carlos Lugo (Lugo) filed a habeas petition in this Court, pursuant to 28 U.S.C. § 2254, to challenge his 2001 state court conviction on three counts of second degree robbery. Respondent has filed an Answer to the Petition and Petitioner has filed a Traverse. For the reasons discussed below, the Petition is DENIED.

**I.     BACKGROUND**

    **A.     FACTUAL SUMMARY[1]**

Lugo along with Antonio Ray Leyba (Leyba) and Richard Islas (Islas) belonged to Salinas East Market, a Norteño criminal street gang. On June 4, 2000, they decided to rob concert promoters at the rodeo grounds. The trio traveled to the rodeo grounds in a maroon

---

[1] The following facts are summarized from the California Court of Appeal's decision in People v. Lugo, Appeal No. H023308, 2003 WL 22391170 (Cal. Ct. Appeal, Sixth Dist., Oct. 21, 2003).

Mitsubishi owned by Lugo's father's fiancée, Patricia Cabrera.  Islas had a .22 caliber handgun in his waistband, Lebya had a .30 caliber sawed off rifle in a suitcase and Lugo had a .40 caliber gun in his waistband.  They also brought changes of clothing, a police scanner, gloves and knit caps.

After arriving at the rodeo parking lot, they surveyed the area for thirty to forty minutes. About 5:00 p.m., they observed the individuals they suspected of having the money entering a large burgundy car.  Lugo, Lebya and Islas followed the car to the Laural Inn and then parked their vehicle at a nearby convenience store. Islas and Lugo exited their vehicles with their beanies, hoods, gloves and weapons. Lebya stayed inside the vehicle to facilitate the getaway.  After walking down a breezeway, Islas and Lugo paused to pull down their hoods and beanies, and pulled their guns.

The burgundy car was driven by Priscliano Villanueva (Villanueva).  Jaime Narango Muñoz (Muñoz), Jose Lara (Lara) and Don Pepe were passengers in Villanueva's car. Villanueva had little money with him.  When Villanueva exited the burgundy car, Islas put a gun to his back, demanded money, and threatened to kill him.  Islas demanded that Villanueva lay on the ground face down.  Villanueva complied, and Islas demanded the car keys. Villanueva threw them over his body.

At gunpoint, Islas and Lugo then ordered Muñoz to get the keys and open the car trunk.  Muñoz complied, and Islas removed two or three duffel bags from the trunk.  Lugo chased Lara up some stairs and took his briefcase.  Islas and Lugo then returned to the Mitsubishi.  Lebya had moved the car closer to the breezeway and had the car doors open. Islas and Lugo got in the car and they drove away.

Eyewitness Marina Marquez (Marquez) saw two men wearing hoods running from the Laurel Inn to a car.  Finding the situation suspicious, Marquez wrote down the vehicle license plate number.  Marquez later saw Muñoz, the robbery victim, speaking with the police.  Marquez then gave the license number she took down to the police.

Leyba, Lugo, and Islas heard their license plate number broadcast over the police scanner.  They drove to the apartment of Lugo's cousin, Joe Montoya, believing they would

be safe there.  They got out of the car, wiped away their fingerprints, and took the luggage into the apartment.  A search of the luggage revealed no money.  Islas asked where the guns were.  They realized they had left the guns in a briefcase in the parking lot by the car.  Islas was angry that they had left the guns behind.  Thus, they went back and brought the guns upstairs.

Islas called his girlfriend, Maria Higuero (Higuero), and asked her to pick them up.  Higuero was seventeen years-old and seven months pregnant with Islas' child.  Higuero borrowed her aunt's green Nissan Sentra, and picked up Islas, Lugo and Leyba outside the apartment complex gate.  Leyba was carrying the suitcase with the guns.

Islas sat in the passenger seat, Lugo sat behind Islas, and Leyba sat behind Higuero.  Lugo, Islas and Leyba discussed hearing their license plate number broadcast over the police scanner and expressed their anger that the robberies had not gone as planned.  Thereafter, they decided to get something to eat.

As they drove down the street, Higuero accidentally traveled into the left-hand turn lane.  When they were stopped at the intersection, Leyba pointed out a man in a black Honda.  Leyba said the man looked like a "scrap," a derogatory term for a Sureño, a rival gang.  After the light changed and they turned left onto Laurel, Lebya told Higuero to slow down so they could verify the man's identity.  Higuero slowed down and pulled to the right.  The Honda approached on the left.  Lugo and Lebya tried to get the man's attention by waving and yelling at him.  Higuero told them to stop.  She rolled up Lebya's window with an automatic switch, but Leyba rolled the window back down.

As the cars approached a red light at the next intersection, they slowed down.  Lebya pulled out his .30 caliber rifle and shot at the Honda.  Islas told Higuero, "Hey, get down," and pulled her down.  Several shots were fired.  Leyba said, "I got him. Go, go" and stopped firing.  The driver of the Honda, Mario Magana, was shot in the head and died. He was a member of the Hebron Street Gang, a Sureño gang and a Norteño gang rival.

**B.    PROCEDURAL HISTORY**

    **1.    State Court Proceedings**

Lugo and Lebya were charged with first-degree murder, two counts of shooting at an occupied motor vehicle, discharging a firearm at a vehicle, and three counts of second-degree robbery. Gang and personal use enhancements were alleged in connection with the murder, in connection with one count of shooting at an occupied motor vehicle, and in connection with discharging a firearm from a vehicle. A personal use enhancement was alleged in connection with all robbery counts. Lugo moved to sever the trial on the robberies from the murder, but the trial court denied his motion.

A jury trial in the case against Lugo and Leyba took place in the Monterey County Superior Court in or about April 2001. Lugo was convicted of three counts of robbery, and the personal use enhancements were found to be true. Lugo was acquitted of the remaining counts. Lebya was convicted of first degree murder, one count of shooting at an occupied motor vehicle, discharging a firearm from a vehicle, and three counts of robbery and various enhancements were found true. Lugo was sentenced to nineteen year and four months in state prison. Lebya was sentenced to sixty-six years to life in state prison.

Lugo filed a direct appeal and habeas petition, which the California Court of Appeal denied on October 21, 2003 in an unpublished disposition. 2003 WL 22391170. The California Supreme Court denied review on January 28, 2004.

    **2.    Federal Court Proceedings**

On February 8, 2005, Lugo filed a habeas petition in this Court, pursuant to 28 U.S.C. § 2254.[2] The Petition alleges three exhausted claims: (1) violation of due process based on the trial court's failure to sever the robbery counts from the murder count;

---

[2] The Petition was filed pro se by Lugo, though the accompanying memorandum appears to have been drafted by an attorney. Attorney John Grele later appeared on behalf of Lugo and filed the Traverse. Mr. Grele filed an oversized Traverse without obtaining prior leave of Court to do so. Despite counsel's transgression, the Court considers the Traverse on the merits.

(2) violation of due process as a result of an erroneous jury instruction on accomplice liability; and (3) violation of due process on the cumulative impact of these alleged errors.

On February 3, 2006, this Court granted Lugo's motion for stay and abeyance so that he could exhaust three new claims of prosecutorial misconduct by the state during his trial. See 2/22/06 Order, Dkt. 47.  Specifically, Judge Fogel granted Lugo leave to exhaust the following claims: (1) the state withheld evidence that would have impeached witness Islas; (2) the state withheld evidence that would have impeached witness Marina Marquez; and (3) the state withheld statements of a potential alibi witness.  Id. at 2.

Despite the Court's ruling, Lugo did not return to the state courts for approximately two years after obtaining a stay and abeyance of his federal petition.  See 9/28/09 Order at 2, Dkt. 55.  Instead, on January 18, 2008, Lugo filed a habeas petition in the Monterey Superior Court asserting sentencing errors—claims that were entirely different from those identified in his motion for stay and abeyance in this Court.  Id.  The state appellate court denied Petitioner's petition on March 13, 2008.  Id.  On May 8, 2008, Lugo filed a habeas petition in the California Supreme Court asserting a sentencing error claim and for the first time raising a claim of ineffective assistance of counsel ("IAC").  Id.  The California Supreme Court denied that petition on November 12, 2008.  Id.

On November 17, 2008, Petitioner filed a motion for leave to amend his petition to add the two newly exhausted claims of sentencing error and IAC.  Dkt. 48.  On September 28, 2009, Judge Fogel denied Petitioner's motion, finding that "[Petitioner]'s new claims are time barred on their face."  9/28/09 Order at 4.  Thereafter, on October 31, 2009, Petitioner filed his Traverse in support of his original Petition.  Dkt. 56, 57.[3]

## II. LEGAL STANDARD

Lugo filed his habeas petition after April 24, 1996, and thus, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies.  Woodford v. Garceau, 538 U.S. 202, 204-07 (2003).  AEDPA "imposes a highly deferential standard for evaluating state-court

---

[3] The Honorable Jeremy Fogel presided over the action from its filing in 2005 until it was reassigned to the undersigned on September 28, 2011.  Dkt. 62.

rulings and demands that state-court decisions be given the benefit of the doubt." Hardy v. Cross, — U.S. —, 132 S.Ct. 490, 491 (2011) (per curiam) (internal quotation marks and citations omitted). To obtain relief under AEDPA, Lugo must show that the state court's decision (1) "was contrary to" clearly established federal law as determined by the Supreme Court, (2) "involved an unreasonable application of" such law, or (3) "was based on an unreasonable determination of the facts" in light of the record before the state court. Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 785 (quoting 28 U.S.C. § 2254(d)).

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under Williams, an application of federal law is unreasonable only if it is "objectively unreasonable." Id. at 409. Further, a state court's decision results in a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).[4]

In reviewing a habeas petition under AEDPA, the Court looks to the state's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). When a federal court is faced with reviewing a state court denial for which there is no reasoned decision, the deferential standard under § 2254(d) cannot be applied because there is "nothing to which we can defer." Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002). Nonetheless, federal habeas review in that instance is not de novo. Delgado v. Lewis, 223

---

[4] "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

F.3d 976, 982 (9th Cir. 2000). Rather, where a state court denies a habeas petition without opinion, the district court must "perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable." Haney v. Adams, 641 F.3d 1168, 1171 (9th Cir. 2011). In other words, to obtain relief, the petitioner must show that "there was no reasonable basis" for the state court's ruling. Id.

## III. DISCUSSION

### A. SEVERANCE

The trial court denied Lugo's motion to sever the trial of the robberies from the murder charge. Lugo argues that the trial court "never engaged in the proper analysis under state or federal law" regarding his severance motion, and that the evidence of gang affiliation (which he claims was intertwined with the murder charge) was highly inflammatory and prejudicial. Traverse at 7. He also asserts that because the robbery and murder charges were tried together, his counsel was compelled to forego any closing argument directed to the robbery counts. Pet'r Mem. in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r Mem.") at 15-16.

A habeas petitioner can establish a violation of his federal due process right to a fair trial if he carries his "burden of demonstrating that the state court's denial of his severance motion rendered his trial 'fundamentally unfair.'" Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997). "[T]he propriety of a consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate." Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998). Additionally, even if the trial court's denial of the severance motion violated Petitioner's due process rights, federal habeas relief is not available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court finds that Lugo has failed to establish a constitutional claim warranting habeas relief. As pointed out by the Court of Appeal, "Lugo's acquittal of the murder-

- 7 -

1. related charges shows the jury weighed the evidence separately as to each charge."  Lugo,
2. 2003 WL 22391170, at *11.  That conclusion is well supported by federal jurisprudence.
3. "The best evidence of the jury's ability to compartmentalize the evidence is its failure to
4. convict all defendants on all counts."  United States v. Unruh, 855 F.2d 1363, 1374 (9th
5. Cir. 1987) (finding no constitutional error in denying severance motion where jury
6. convicted petitioner on some counts and hung on others); accord Park v. California, 202
7. F.3d 1146, 1150 (9th Cir. 2000) (same); see also United States v. Sullivan, 522 F.3d 967,
8. 981-82 (9th Cir. 2008) ("The jury's selective verdicts against [defendant] demonstrate that
9. his case received individual consideration.").  Thus, Lugo's claim that he was prejudiced by
10. the denial of his severance is belied by his acquittal on the murder charge.

11.       Lugo counters that the jury's mixed verdict does not establish the jury's ability to
12. compartmentalize evidence on the ground that the robbery charges were weak.  Traverse at
13. 10.  Though Lugo neglects to cite any authority to support his position, the Court notes that
14. "[t]his circuit recognizes potential due process concerns when a poorly-supported count is
15. combined with one that is well supported."  Park, 202 F.3d at 1150.  However, the Court of
16. Appeal addressed this issue, and held that evidence supporting the robbery *and* murder
17. charges were "strong."  Lugo, 2003 WL 22391170, at *10.  After citing specific evidence
18. from the trial record to support this finding, the court concluded that "[g]iven the strength
19. of the prosecution's evidence, this case clearly did not involve a situation where a weak
20. case was joined with a strong case, or another weak case, and therefore joinder was
21. unlikely to have affected the verdict."  Id.  Though Lugo presents a different perspective on
22. the evidence presented at trial, he has failed to show that the state court's conclusion "was
23. contrary to" clearly established federal law, "involved an unreasonable application of" such
24. law, or "was based on an unreasonable determination of the facts" in light of the record
25. presented.  See Harrington, 131 S.Ct. at 785.

26.       Finally, as the state court expressly found, Lugo's contention that his trial counsel
27. was compelled to forego closing argument on the robberies is not compelling.  The Court of
28. Appeal explained:  "after reviewing the argument of counsel, we reject Lugo's contention

that counsel was forced to refrain from presenting closing argument in the robbery cases in order to effectively defend against the more serious murder charge." Lugo, 2003 WL 22391170, at *11.  The Court finds nothing objectively unreasonable in that determination. As pointed out by Respondent, and ignored by Lugo, the record shows that during his closing argument, Lugo's trial counsel, in fact, attacked the State's evidence on the robbery counts and attacked the credibility of the prosecution's witnesses by, inter alia, highlighting inconsistencies in their testimony and pointing out that some of them had plea agreements with the State.  See RT 2334-2339, 2344.  In view of this record, the Court finds that Lugo has failed to demonstrate that habeas relief based on the denial of his severance motion is warranted.

### B.  INSTRUCTIONAL ERROR

Lugo next claims that the trial court gave an erroneous instruction regarding accomplice testimony.  A challenge to jury instructions generally does not state a federal constitutional claim.  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  To obtain federal habeas relief based on instructional error, the petitioner must demonstrate "that an erroneous instruction so infected the entire trial that the resulting conviction violates due process."  Id. In making its determination, the Court must evaluate the challenged jury instructions "in the context of the overall charge to the jury as a component of the entire trial process." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

As a general matter, the reliability of testimony of an accomplice is viewed with some skepticism.  See People v. Gonzales, 52 Cal. 4th 254, 582 (2011).  Such concerns are codified in California Penal Code section 1111, which provides that a "conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other

evidence as shall tend to connect the defendant with the commission of the offense."[5]  At trial, the court gave an instruction which defined "accomplice" as "a person who is subject to prosecution for the identical offense charges [sic] in Counts One through Seven against the defendant on trial by reason of aiding and abetting . . . ."  CT 894.[6]

According to Lugo, the seven charges at issue involved two separate incidents (i.e., the robbery and the gang shooting), and that complicity in either of the two incidents was sufficient to render a witness an accomplice.  Lugo argues that the instruction was erroneous because it unnecessarily required the jury to find that "the witness was potentially subject to prosecution in all seven counts [] before finding such a witness to be an accomplice."  Pet'r Mem. at 20.  Lugo posits that the accomplice instruction erroneously allowed the jury to find that Islas and/or Higuero (Islas' girlfriend) were not accomplices, which, in turn, would ostensibly relieve the prosecution of its obligation under section 1111 to corroborate these witnesses' testimony.  Id. at 20-21.  That, Lugo claims, effectively relieved the prosecution of establishing his guilt beyond a reasonable doubt.  Id.

Respondent does not directly dispute Lugo's contention that the trial court's accomplice instruction was in error, but instead, contends that such error does not give rise to a constitutional claim.  The Court agrees.  The Ninth Circuit has held that section 1111 is a state statutory rule that does not implicate federal constitutional concerns so long as the uncorroborated testimony is not "incredible or insubstantial on its face."  Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000); see also United States v. Augenblick, 393 U.S. 348, 352 (1969) ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."); Lankford

---

[5] Section 1111 states: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  Cal. Pen. Code § 1111.

[6] This instruction was based on a modification to CALJIC 3.10.  The instruction was given without objection by the parties.  Pet'r Mem. at 21.

v. Arave, 468 F.3d 578, 584 (9th Cir. 2006) ("federal law permits bare accomplice testimony"); United States v. Andrews, 455 F.2d 632, 633 (9th Cir. 1972) ("It is well settled in our Circuit that a conviction may properly rest on the uncorroborated testimony of an accomplice, if the testimony is not incredible or unsubstantial on its face.").

Lugo contends that "there was no substantial evidence [that he] participated in the robbery other than the testimony of Mr. Islas," and that Islas' testimony may not have been subjected to the corroboration requirement. Pet'r Mem. at 7. However, Lugo does not contend or otherwise show in either his Petition or Traverse that Islas' testimony, even if uncorroborated, was "incredible or insubstantial on its face." Laboa, 224 F.3d at 979. In addition, the Court has independently reviewed the transcript of Islas' trial testimony and concludes that it is neither facially incredible nor insubstantial. RT 1755-1875. Thus, the Court finds that Lugo has failed to present a claim of constitutional magnitude.[7]

Even if Lugo had presented a federal habeas claim, the Court is not persuaded that the lone instruction at issue so infected the entire trial in a manner that denied Lugo his right to due process. See Estelle, 502 U.S. at 72. The gist of Lugo's claim is that the accomplice jury instruction allowed the jury to convict him of the robbery counts based on the testimony of Islas, whose testimony as accomplice should have been viewed as unreliable. The Court of Appeal, however, took this into account, and concluded that the evidence supporting the robbery convictions was strong:

> The evidence relating to the robberies was strong, with Islas testifying about the events that transpired. <u>Although Islas was an accomplice, he gained credibility because he was endangering his life by testifying against Lugo and Lebya</u>. Islas's testimony was corroborated. Lugo's car was identified at the scene of the robbery, and Lugo's father confirmed that Lugo had the car all day. The car was found near the residence of Lugo's cousin, and was wiped down for fingerprints as

---

[7] Lugo argues that Laboa is no longer good law following the Supreme Court decisions in Herrera v. Collins, 506 U.S. 390, 407 (1993) and Montana v. Egelhoff, 518 U.S. 37, 58 (1996) (Ginsberg, J., concurring). See Traverse at 17. Setting aside that neither of these Supreme Court decisions addressed the use of uncorroborated accomplice testimony, the Court notes that those decisions preceded Laboa. Tellingly, Lugo cites no authority holding Laboa or the other Ninth Circuit authority cited by Respondent has been overruled.

- 11 -

> described by Islas. Third-party witnesses described the robbery car. Higuero testified that the men were talking about the robbery that they had committed at the Laurel Inn, and that they were upset that their license plate number had been broadcast on the police scanner.

Lugo, 2003 WL 22391170, at *10 (emphasis added); see Laboa, 224 F.3d at 979 ("The corroborative evidence required by section 1111 need not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.") (internal quotation marks and citation omitted). The Court finds nothing objectively unreasonable with respect to the Court of Appeal's findings and analysis. See Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004) (noting that under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (internal quotations omitted). Accordingly, Lugo is not entitled to federal habeas relief on his claim based on instructional error.

### C.   CUMULATIVE ERROR

"Even if no single error were sufficiently prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." Alcala v. Woodford, 334 F.3d 862, 893 (9th Cir. 2003) (citations, internal quotation marks, and brackets omitted). Lugo contends that the trial court's purported errors in refusing to sever and with respect to the accomplice jury instruction together denied him a fair trial. However, as discussed, the Court finds no error with respect to the denial of the motion to sever. With regard to the instructional error claim, Respondent does not directly dispute Lugo's contention that the instruction was inaccurate. Nonetheless, a single error does not give rise to a claim of cumulative error. See United States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012) ("There can be no cumulative error when a defendant fails to identify more than one error.").

- 12 -

### D. EVIDENTIARY HEARING

Lugo has requested an evidentiary hearing in connection with his severance claim. Pet'r Mem. at 23-24. In particular, Lugo desires to present testimony from his trial counsel that he refrained from addressing the robberies in his closing argument as a result of the denial of his severance motion. Id. Lugo contends that an evidentiary hearing is necessary, given the failure of the California Court of Appeal and Supreme Courts to conduct such a hearing. Id.

AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing." Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Cullen v. Pinholster, 131 S.Ct. 1388, 1400-401 (2011) ("Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing"). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review" to determine whether a claim adjudicated by the state court was contrary to or involved an unreasonable application of clearly established federal law. Cullen, 131 S.Ct. at 1400. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id.

As noted, the Court of Appeal expressly considered and rejected Lugo's contention that the joinder of the murder and robbery charges compelled trial counsel to forego argument on the robbery countst. Lugo, 2003 WL 22391170, at *11. Having found nothing objectively unreasonable with respect to that determination, the Court finds that an evidentiary hearing is neither necessary nor appropriate in this case.

### E. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court denying a habeas petition to grant or deny a certificate of appealability in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (eff. Dec. 1, 2009). The Court declines to issue a certificate of appealability in this case, as Lugo has not demonstrated that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

1  debatable whether the district court was correct in its procedural ruling." <u>Slack v.
2  McDaniel</u>, 529 U.S. 473, 484 (2000).
3  **IV.    <u>CONCLUSION</u>**
4      For the reasons set forth above,
5      IT IS HEREBY ORDERED THAT the petition for a writ of habeas corpus is
6  DENIED.  The Court declines to issue a certificate of appealability.  The Clerk of the Court
7  shall enter judgment and close the file.
8      IT IS SO ORDERED.
9  Dated:  September 28, 2012
10                                  *Saundra B Armstrong*
                                    SAUNDRA BROWN ARMSTRONG
                                    United States District Judge